Levis Leon **ALDRIDGE,**
Petitioner–Appellant,
Cross–Appellee,

v.

Richard L. **DUGGER,** Secretary, Florida Department of Corrections, Respondent–Appellee, Cross–Appellant.

No. 89–5573.

United States Court of Appeals, Eleventh Circuit.

Feb. 20, 1991.

---

Richard L. Jorandby, Public Defender, Steven H. Malone, West Palm Beach, Fla., for petitioner-appellant, cross-appellee.

Robert A. Butterworth, Atty. Gen., Joan Fowler, Deborah Guller, Consiglia A. Terenzio, Dept. of Legal Affairs, West Palm Beach, Fla., for respondent-appellee, cross-appellant.

Before KRAVITCH, JOHNSON and CLARK, Circuit Judges.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's order vacating the death sentence of the petitioner under *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and remanding the case to the state trial court for resentencing.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

The petitioner, Levis Leon Aldridge, was convicted of murdering a restaurant manager in Ft. Pierce, Florida, during the course of a robbery. Aldridge had worked at the restaurant for approximately three months in 1974 as part of a work release program at a local prison. He became familiar with the restaurant's closing procedures and burglar alarm system. During these three months, Aldridge allegedly told both a fellow restaurant employee and one of his cellmates that he wanted to rob the restaurant when he was released on parole.

On September 2, 1974, Aldridge supposedly phoned Charles Strickland, whom Aldridge met in prison, and asked to borrow his shotgun to go hunting. Early in the evening of September 3rd, two young girls accompanied Strickland to the parking lot

of the Ft. Pierce Hotel where he was to rendezvous with Aldridge. They saw Strickland give a shotgun and five shells to someone named "Levi." [1]

The robbery and murder occurred that same night sometime shortly after midnight. Strickland's shotgun was later identified as the gun used in the killing.

At 1:00 a.m. a security guard at a nearby warehouse saw a car similar to the one owned by Aldridge being driven by someone who resembled Aldridge.

At 1:30 a.m. Aldridge allegedly called Strickland and told him that he had killed someone with the shotgun.

At 2:00 a.m. the police stopped Aldridge as he drove slowly by the restaurant. The officers found that Aldridge had several hundred dollars in small bills stuffed into his pockets. Aldridge told the police that he had received the bulk of the money when he had been paroled seven days earlier and the rest of the money was from a recently cashed paycheck. Aldridge was able to produce receipts corroborating his story.

The next day, Aldridge asked Strickland to help him recover the shotgun from the warehouse parking lot. Aldridge allegedly proceeded to describe the robbery to Strickland, explaining that he shot the restaurant manager because the manager tried to remove Aldridge's mask.

## B. *Procedural History*

### 1. Trial

The public defender's office represented Aldridge at trial. The attorney who defended Aldridge had tried another capital case just a few weeks before Aldridge was to go on trial. On January 2, 1975, the attorney moved for a continuance. A hearing was held on this motion on the morning of January 6, 1975. The court denied the motion and ordered the trial to begin the same day. Aldridge was convicted of murder in the first degree. Aldridge claims this trial was marred because his trial

counsel was ineffective, the state failed to release certain exculpatory evidence, and the state put on false testimony.

The penalty phase of the trial was dominated by two factors. First, during voir dire, the jury was repeatedly told that if it found Aldridge guilty, it would then give the court an advisory opinion on the sentence, but the judge would make the ultimate decision. Similarly, the judge instructed the jury at sentencing that he would bear the responsibility for deciding whether to impose the death sentence. Second, the death penalty statute was at that time being challenged on constitutional grounds. During the pretrial conference, the trial judge told Aldridge that the Florida statute was likely to be invalidated. Similarly, Aldridge's attorney told him that the death penalty would be declared unconstitutional. It was not.

### 2. Post–Trial Proceedings

On direct appeal, a divided Florida Supreme Court affirmed Aldridge's conviction and sentence. *Aldridge v. State*, 351 So.2d 942 (Fla.1977), *cert. denied*, 439 U.S. 972, 99 S.Ct. 467, 58 L.Ed.2d 432 (1978).

In November 1979, Aldridge filed a Fla. R.Crim.P. 3.850 motion challenging the conviction and execution on fifteen grounds. The trial court denied the Rule 3.850 motion. The Florida Supreme Court affirmed the trial court's denial of this motion following the trial court's evidentiary hearing on the effectiveness of trial counsel claim. *Aldridge v. State*, 425 So.2d 1132 (Fla. 1982).

In June 1983, Aldridge filed his first federal habeas corpus petition, asserting ineffective assistance of counsel, error in the second degree felony murder charge, and error in the trial court's failure to consider nonstatutory mitigating circumstances. On June 8, 1984, the district court denied the petition. This Court affirmed by a divided panel. *See Aldrich (sic) v. Wainwright*, 777 F.2d 630 (11th Cir.1985);

---

**1.** The two girls later could not identify Aldridge as "Levi." But they did identify Aldridge's car

as the one that "Levi" used to store the guns.

*see also id.* at 642–44 (Johnson, J., dissenting). On October 20, 1986, the Supreme Court denied certiorari.

In January 1987, Aldridge filed a second Fla.R.Crim.P. 3.850 motion, asserting the claims currently before this Court. The trial court denied relief without an evidentiary hearing, and the Florida Supreme Court affirmed. *Aldridge v. State*, 503 So.2d 1257 (Fla.1987).

Aldridge then filed the present habeas corpus petition in district court. The district court entered a stay of execution and ordered an evidentiary hearing on Aldridge's claim that the jury and trial judge did not consider nonstatutory mitigating circumstances. The court found that the trial court's jury instructions limited the jury to considering only the statutory mitigating circumstances and that the trial judge likewise considered only statutory mitigating circumstances. Accordingly, the district court granted Aldridge partial relief, vacating his death sentence and remanding to the trial court for resentencing. Aldridge filed the present appeal with this Court on his remaining claims, and Florida filed a cross-appeal.

## II. ANALYSIS

### A. *Abuse of the Writ*

Aldridge alleges five grounds for granting his writ of habeas corpus. The state, in addition to attacking the merits, claims that four of the grounds should not be heard because they are either a successive petition or an abuse of the writ under rule 9(b) of the rules governing section 2254 cases. Rule 9(b) states:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

██ The standard for reviewing the failure to bar a claim is abuse of discretion. *Gunn v. Newsome*, 881 F.2d 949, 957 (11th Cir.1989) (en banc). The *Gunn* court held that the "outer limits of the district court's discretion may be readily ascertained." *Id.* The court went on to hold that a court abuses its discretion when it hears a claim that was "knowingly and deliberately withheld from a prior petition." *Id.*

██ Under this standard, the district court did not abuse its discretion. The state merely alleges that the petitioner knew or should have known about the evidence that is the basis for the *Brady*, false testimony, and ineffective assistance claims presented in his petition. As *Gunn* noted, there are two types of cases implicated by rule 9(b): those where petitioners claim not to know certain facts when they file their first petition, and those where petitioners claim not to know that the facts amount to a legal basis for habeas relief. *Id.* at 959. Aldridge presents us with the former case. The state can show that the district court abused its discretion if it can prove that Aldridge either knew or should have known about these facts at the time the first petition was filed. The state makes no such showing. In fact, before the district court, the state conceded that Aldridge did not actually know these facts prior to filing his first petition. Aldridge, however, may be penalized for his lack of knowledge if he unreasonably failed to make the necessary inquiries. *Id.* The state asserts that this is an appropriate case for penalizing Aldridge for failing to make inquiries. We disagree. The state fails to provide any argument to support its claim that Aldridge acted unreasonably by failing to discover evidence possessed by the state. We will reverse the district court only when it abuses its discretion by hearing claims "knowingly and *deliberately* withheld ... from prior petition[s] ..." *Id.* at 957 (emphasis added). The state cannot seriously argue that Aldridge deliberately turned a blind eye to pursuing evidence prior to his first petition and thus chose to move a step closer to the electric chair while at the very same time he was conducting a strong legal defense to avoid the execution of his death sentence.

■ The state also alleges that the *Hitchcock* claim was litigated in the first petition and therefore is a successive petition. The state attacks Aldridge for "abusing the process" and "sandbagging." The state, however, neglected to mention this procedural bar in the district court, despite Aldridge's extensive briefing of the question and his assertion in his district court reply brief that the state had conceded that the merits were properly before the court. One can construe the state's current argument, in light of its failure to allege the procedural bar in district court, only as an argument that the district court abused its discretion by not anticipating what the state should have argued. For obvious reasons, we conclude that the state's position is without merit. We hold that when the state fails to argue a successive petition or an abuse of the writ claim before the district court, the state is precluded from arguing in this Court that the district court abused its discretion by hearing the writ.[2]

B. *Did the District Court Err in Denying an Evidentiary Hearing on Aldridge's Claims that the Prosecution Withheld Exculpatory Evidence and Knowingly Presented False Testimony?*

Aldridge argues that the prosecution should have revealed several pieces of exculpatory evidence and that the prosecution knowingly presented false testimony.

First, the state did not reveal that the trial prosecutor, Robert Stone, had previously worked for the public defender's office where he represented Strickland. This fact raises several problems. For example, the public defender theoretically had a conflict of interest in that the office needed to impeach Strickland in order to acquit Aldridge but to do so would endanger the attorney-client relationship with Strickland. There is also at least an appearance of impropriety where the public defender turned prosecutor chose to prosecute Aldridge while granting Strickland transactional immunity.[3] Finally, the prosecutor was prevented, because of the attorney-client relationship with Strickland, from divulging information gained in that capacity which would help impeach Strickland.

Second, the prosecutor did not reveal to the defense that Strickland was diagnosed a sociopath, indicating, among other things, that he had a tendency to lie.

Third, the prosecution intervened with the parole board on Strickland's behalf, convincing the board not to revoke Strickland's parole. While this fact indicates that Strickland had transactional immunity, the prosecution allowed Strickland to mislead the jurors by saying he had only use immunity.

■ In order to prove a *Brady* violation, Aldridge "must demonstrate (1) that the prosecution suppressed evidence (2) that the evidence suppressed was favorable to him or exculpatory and (3) that the evidence was material." *Delap v. Dugger,* 890 F.2d 285, 298 (11th Cir.1989).[4] The dispute in this case revolves around the

---

**2.** Our holding therefore treats federal procedural bars such as abuses of the writ and successive petitions analogous to state procedural bars. *See Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980) (holding that state's failure to argue state procedural bar in lower courts resulted in waiver of the bar); *Boykins v. Wainwright,* 737 F.2d 1539 (11th Cir.1984) (same).

**3.** At the very least, Strickland's parole could have been revoked for possessing a gun. There also was a possibility of bringing charges for felony murder in the second degree under the statute in place in 1974. *See Adams v. State,* 341 So.2d 765, 769 (Fla.1976) (felony murder in the second degree applies to accessories before the fact who are not present at the murder).

Not only did Strickland admit to lending Aldridge the gun, Strickland also admitted to helping hide the evidence of the crime.

**4.** Aldridge also raises a *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), claim that the prosecutor made a deal with Strickland and that Strickland's testimony misled the jury on the nature of the deal. The test for whether this testimony warrants a new trial is the same as the test for a *Brady* violation, *see id.* at 154, 92 S.Ct. at 766 ("A new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury ...'" (internal citation deleted)), so we will treat the two claims identically for purposes of this analysis.

third question. The district court held that the alleged *Brady* evidence was relevant only to the impeachment of Strickland and that because Strickland "had already been severely impeached" the evidence was "merely cumulative" and therefore not material.

The Court in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), held that, under *Brady*, evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383. On one hand, there is some reason to suspect that this evidence could have been effective. Strickland was the sole witness directly tying Aldridge to the crime. *Aldrich (sic) v. Wainwright*, 777 F.2d 630, 637 (11th Cir.1985). And at least four judges have thought the prosecution's case very weak. *See id.* at 644 (Johnson, J. dissenting); district court op. at 1; and *Aldridge v. State*, 351 So.2d 942, 945 (Fla.1974) (Boyd, J., dissenting) (Hatchett, J. dissenting). On the other hand, during the last habeas appeal, this Court held that Strickland was "exposed to substantial impeachment" on his criminal record, lying under oath, parole violations, and ownership of the murder weapon. *Aldrich* (sic), 777 F.2d at 637. We are bound by this conclusion as it is now the law of the case. Therefore, following our earlier opinion, we conclude that any additional impeachment of Strickland would have been merely cumulative. We cannot conclude that had the prosecution provided Aldridge with this evidence, the result of the trial would have been different.[5]

## C. Did the District Court Err in Denying an Evidentiary Hearing on Aldridge's Ineffective Assistance of Counsel Claim?

Aldridge argues, in the alternative to his *Brady* and *Giglio* claims, that the same facts prove an ineffective assistance of counsel claim. Aldridge notes that this Court unanimously held that his counsel was ineffective, though it divided on the question of prejudice. *See Aldrich (sic) v. Wainwright*, 777 F.2d at 633; *id.* at 642 (Johnson concurring in part and dissenting in part). Aldridge argues that these facts are sufficient to constitute prejudice.

■ The state, however, argues that this claim is procedurally barred under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Florida courts held that this claim was procedurally barred under Florida's successive petition rule. *Aldridge v. State*, 503 So.2d 1257 (Fla.1987) (per curiam). This Court has held that a state's successive petition rule is adequate to create a procedural bar. *Presnell v. Kemp*, 835 F.2d 1567 (11th Cir. 1988). However, a procedural bar may be excused if the petitioner is able to prove both cause and prejudice. *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. Inexplicably, Aldridge has ignored the state's arguments that this claim is procedurally barred and therefore he has not attempted to prove cause or prejudice. Therefore, we find this claim procedurally barred.

## D. Did the District Court Err in Denying an Evidentiary Hearing on Aldridge's Claim that the Trial Court Diminished the Sentencing Jury's Sense of Responsibility?

Aldridge next argues that the district court should have granted a hearing on his claim that because of statements made during the voir dire and during the sentencing jury charge the jury had a diminished sense of responsibility in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

Florida law requires a jury's sentencing recommendation in a death penalty case to be "given great weight" by the trial judge. *Tedder v. State*, 322 So.2d 908, 910 (Fla. 1975). The jury in Aldridge's case repeatedly heard during their voir dire and during their sentencing instructions that the "final decision as to what punishment shall be imposed rests solely and only with

---

**5.** We reach this result only because of the holding of the first panel of this Court. If we were writing on a blank slate, we might have reached a different conclusion.

the judge" (sentencing instruction), that the decision was not their responsibility (voir dire of Mrs. Haynes), and that their opinion was only advisory (voir dire of Mrs. Johnson). Despite what he repeatedly told the jury, the judge told a local paper that he adhered to the jury's recommendation in five death penalty cases because "I don't have any God-given power to go against the majority of the jury." Tierney, *Sample's Heartache: Randolph Receiving Sentence of Death*, Palm Beach Post–Times, July 16, 1978 § B at 2, col. 1. Evidently, the judge was not aware of his state-given power of reviewing jury decisions.

Before turning to the merits of this claim, it is necessary to turn first to the issue of procedural bar. The Florida Supreme Court held that the *Caldwell* claim failed on its merits "and also is procedurally barred because it could have been raised on direct appeal." *Aldridge v. State*, 503 So.2d at 1259. This procedural bar (the failure to raise the claim on direct appeal) may be excused if the petitioner can show both cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Aldridge claims that he can establish cause to excuse the procedural bar because *Caldwell* was not written until after he was sentenced to death. *See Reed v. Ross*, 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). The Supreme Court rejected a similar claim in *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), when it created an exception to the cause requirement for *Caldwell*-type claims. The Supreme Court in *Adams* interpreted *Caldwell* to require the petitioner to show that the remarks to the jury improperly lowered the jury's collective sense of responsibility below the level of actual responsibility imposed by state law. *Id.* at 407, 109 S.Ct. at 1215. The *Adams* court therefore held that in order to show cause for excusing a procedural

bar on a *Caldwell* claim, the petitioner needs to prove that he had cause for not appealing the state law violation when the improper remarks were made. *Id.* at 408, 109 S.Ct. at 1216. Under *Adams*, the fact that Aldridge's trial occurred years before *Caldwell* is irrelevant to the question of whether cause exists. Aldridge can establish that his claim is novel, and thereby prove cause, only if he can establish that his trial and direct appeal predated the date that the state law became sufficiently clear for him to raise the *Caldwell*-type claim.

■ The Supreme Court in *Adams* noted that the Florida state-law equivalent of a *Caldwell* claim was created by the series of cases starting with *Tedder v. State*, 322 So.2d 908 (Fla.1975) (per curiam), which set out the levels of responsibility for both the judge and the jury in a decision to sentence a defendant to death. *See Adams*, 489 U.S. at 405, 109 S.Ct. at 1214. Aldridge claims that his trial was prior to the *Tedder* decision, thus creating cause for not making the objection. However, Aldridge's direct appeal was not heard by the Supreme Court of Florida until June of 1977, well after the *Tedder* decision.[6]

Aldridge also argues that the procedural bar should not apply to the *Caldwell* claim because he is actually innocent of the death penalty. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). *Carrier* stated that "we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*

The Supreme Court returned to the actual innocence exception in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The *Smith* Court recognized that the actual innocence exception is applicable to those innocent of the death penalty as well as those innocent of the underlying crime. *Id.* at 537–38, 106 S.Ct. at 2667–68.

---

6. Similarly, Aldridge raises the ineffectiveness of his trial counsel to establish cause, *see Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), but the default was not due to an error at trial, it was due to an error on direct appeal. Aldridge has not claimed that his appellate counsel was ineffective.

The petitioner in *Smith* challenged his sentence of death because he was not advised of his rights prior to his confessing to a state appointed psychiatrist who was hired to evaluate him following his arrest. The Court held that the psychiatrist's testimony is not the type of error which justifies utilizing the actual innocence exception. The Court held that the actual innocence exception applied only to those errors which either "precluded the development of true facts [or] resulted in the admission of false ones." *Id.* at 538, 106 S.Ct. at 2668.

The Supreme Court also dealt with the actual innocence exception in *Dugger v. Adams, supra.* The *Dugger* Court held that the actual innocence exception is not implicated by a *Caldwell* error. *Id.* 489 U.S. at 410–12 n. 6, 109 S.Ct. at 1217 n. 6. The fact "that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received." *Id.* The Court in this passage draws a distinction between those errors which raise only a possibility that the sentencing body may have acted improperly and those errors which point to a specific set of facts which would allow a court to conclude that this particular petitioner probably was incorrectly sentenced.

■ While the Supreme Court has not provided extensive guidelines to guide the application of the actual innocence exception, a few things are clear. The Court has held that the actual innocence exception applies to those who were wrongly sentenced to death. *See Smith v. Murray, supra.* The exception should be used only in extraordinary cases. *See Murray v. Carrier, supra.* And in addition the exception should be used only when three factors

are present: first, the error precluded the development of true facts or resulted in the admission of false facts, *see Smith v. Murray, supra;* second, the error casts significant doubts upon the accuracy of the conviction or sentence, *see Murray v. Carrier, supra;* and third, the error is specifically tied to the individual case and does not merely raise the possibility that the sentence was inaccurate. *See Dugger v. Adams, supra.*

■ With these guidelines in mind, it is clear that Aldridge cannot point to any error suggesting that he is actually innocent. Aldridge argues that a *Caldwell* error in his trial demonstrates his actual innocence. As the Court held in *Dugger, Caldwell* errors are not sufficient to implicate the actual innocence exception.[7]

**E. Did the District Court Err in Granting Aldridge Relief on his Claim that the Sentencing Jury and Trial Judge Failed to Consider Nonstatutory Mitigating Factors?**

The district court granted Aldridge relief on his claim that the trial court's instruction limited the jury's consideration of nonstatutory mitigating circumstances in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). In *Hitchcock,* the Supreme Court found that the following instruction improperly limited consideration of mitigating circumstances by the jury and the trial judge:

Before proceeding to their deliberations, the members of the jury were told by the trial judge that he would instruct them "on the factors in aggravation and mitigation that you may consider under our

---

7. Aldridge also argues that he is actually innocent of the death penalty because only one aggravating factor (the murder was heinous, atrocious, and cruel) was found by the trial court and that factor was struck down on direct appeal. *See Aldridge v. State,* 351 So.2d 942 (Fla. 1977). Aldridge argues that on appeal the Florida Supreme Court found other aggravating factors (the murder was committed while on parole, and during a robbery) and thus sustained his sentence of death in violation of *Pres-*

*nell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978) (per curiam) (holding that state appellate courts may not find aggravating factors not specifically found by the trial courts). Aldridge misrepresents the record. The trial court made specific findings about the murder being committed while Aldridge was on parole and about the murder being committed during a robbery. Aldridge's actual innocence argument therefore must fail.

law." He instructed them that "[t]he mitigating circumstances which you may consider shall be the following ..." (listing the statutory mitigating circumstances).

*Id.* at 398, 107 S.Ct. at 1824.

 The instruction in the present case was substantially the same as that rejected by the Supreme Court in *Hitchcock.* At the beginning of the penalty phase, the trial court instructed the jury as follows:

At the conclusion of the taking of the evidence, and after argument of counsel, you will be instructed on the factors in aggravation and mitigation that you may consider.

After closing arguments for the penalty phase, the trial court gave the following instruction:

The mitigating circumstances which you may consider, if established by the evidence, are these: [listing statutory mitigating circumstances].

This instruction limited the jury to consideration of the statutory mitigating circumstances. The trial judge, moreover, stated in his findings of fact that he considered only the statutory mitigating circumstances. In cases involving instructions similar to the instruction in the present case, this Court has held that the instructions violated *Hitchcock. Delap v. Dugger,* 890 F.2d 285, 303–04 (11th Cir.1989); *Demps v. Dugger,* 874 F.2d 1385, 1389 n. 8 (11th Cir.1989); *Jones v. Dugger,* 867 F.2d 1277, 1279 (11th Cir.1989); *Clark v. Dugger,* 834 F.2d 1561, 1569 (11th Cir.1987). Accordingly, we hold that the trial court's instruction violated *Hitchcock.*

 The state first argues that any *Hitchcock* error should be deemed harmless because Aldridge declined to present any mitigating evidence. Aldridge evidently instructed his attorney to either win his acquittal or get him the death penalty. The state reads this Court's decision in *Clark v. Dugger,* 834 F.2d 1561 (11th Cir. 1987), to hold that a failure of the defen-

dant to make an offer of proof of nonstatutory mitigating circumstances results in the waiver of any *Hitchcock* claim. Such a reading is unsupported by the language of *Clark. Clark* held that the error was harmless because "there were no nonstatutory mitigating circumstances to consider." *Id.* at 1569. We do not interpret the *Clark* court to imply that absent an offer of mitigating circumstances the defendant waives any chance of bringing a *Hitchcock* claim. *Clark* stands for the simple proposition that a *Hitchcock* claim is harmless when the defendant is unable to point to any nonstatutory mitigating circumstances. Aldridge could have presented nonstatutory mitigating circumstances and therefore is not in the same position as Mr. Clark. In the alternative, the state reads *Clark* to hold that the petitioner forfeits a *Hitchcock* claim when he makes a tactical decision at trial not to present the evidence. While there is language in *Clark* supporting the state's alternative position, it is predicated on the idea that the petitioner made the tactical decision in the absence of any action by the court which prevented him from introducing the nonstatutory evidence. *Id.* at 1569 n. 16.

In the instant case, the district court made a finding that the state trial court prevented the petitioner from presenting nonstatutory mitigating evidence. After reviewing the record, we conclude that the district court's finding was not clearly erroneous. The district court correctly found that both Aldridge's trial counsel and the judge assured Aldridge that the United States Supreme Court was on the verge of declaring the death penalty unconstitutional.[8] Second, Florida law, at the time, clearly took the position that nonstatutory mitigating evidence was irrelevant to the sentencing hearing. *See, e.g., Hitchcock v. Dugger,* 481 U.S. 393, 394, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347 (1987). Because of these two factors, Aldridge decided not to present mitigating evidence. We conclude as a matter of law that both of these

8. Aldridge thought that he would be put on death row, where he believed the living conditions would be better than where the general prison population was housed, and then after a

few months or years the Supreme Court would declare the death penalty unconstitutional and he would serve out his sentence within the general prison population.

factors are independently sufficient to constitute actions by the state trial court preventing the petitioner from placing into evidence nonstatutory mitigating factors.

■ Moreover, Aldridge, unlike Clark, had mitigating evidence to present. Aldridge had no previous convictions for violent crime. *See Proffitt v. State*, 510 So.2d 896, 898 (Fla.1987) (holding that nonviolent history is a valid mitigating factor). Strickland was shown disproportionate lenience compared to Aldridge, even considering his role in the crime. Aldridge grew up extremely poor, living in a tarpaper shack, picking cotton from an early age. *See Spivey v. State*, 529 So.2d 1088, 1095 (Fla. 1988) (holding that impoverished and unstable upbringing is a valid mitigating factor). His parents were illiterate. *Id.* His father died when he was very young, and his mother died sometime after his father. *Id.* He worked long and hard before turning to a life of crime. *See Bryan v. State*, 533 So.2d 744, 749 (Fla.1988) (holding that evidence of hard work is a valid mitigating factor). He was overseas in the Army for sixteen months. *See Masterson v. State*, 516 So.2d 256, 258 (Fla.1987) (holding that military service is a valid mitigating factor). And, while in prison, he completed high school and did some college level work.

The state counters that none of the mitigating factors would have changed the outcome of the sentencing and therefore the *Hitchcock* error should be considered harmless beyond a reasonable doubt. The state points out that the nonviolent criminal history mitigating factor would have opened the door to a discussion of Aldridge's extensive criminal history, including fourteen counts of larceny, breaking and entering, and escape. The state further notes that the military history would have opened the door to a discussion of Aldridge's discharge for being AWOL. The state also notes that the disparate treatment of Strickland is commensurate with Strickland's diminished culpability. However, the state gives no coherent reason why Aldridge's impoverished childhood, his being an orphan, his attempts at education, and his hard work as a young man should not be counted as mitigation. Absent a rationale, the error of not considering this evidence cannot be held harmless.

■ Finally, the state argues that this Court ought to deem the *Hitchcock* claims abandoned because, in state court, Aldridge premised his *Hitchcock* claim on the failure of the trial court to instruct the jury on whimsical doubt as a mitigating factor. *See Smith v. Wainwright*, 741 F.2d 1248, 1255 (11th Cir.1984) (holding that whimsical doubt is a valid mitigating factor). The state claims that Aldridge should be penalized for sandbagging these facts until he had a federal forum to develop the record. The Supreme Court in *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), held that the defendant needs only to present the claim to state courts to comply with any exhaustion requirement. As the *Hillery* Court noted, the Supreme Court has "never held that presentation of additional facts to the district court ... evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts." *Id.* at 257–58, 106 S.Ct. at 620–21. Aldridge presented his claim to the state courts and the state courts ruled on the claim. Now, he is presenting the same claim with the benefit of additional facts to a federal court. Therefore, the state's argument is without merit.

## III. CONCLUSION

We therefore AFFIRM the district court's grant of the writ on the ground that the trial court failed to consider nonstatutory mitigating factors. We AFFIRM the district court's denial of the writ as to the other issues presented by petitioner. This case is REMANDED to the district court.