[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15311
_____

D.C. Docket No. 8:12-cr-00337-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

J. PATRICK BRESTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 20, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BALDOCK,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

This appeal requires us to decide whether the government's failure to inform J. Patrick Brester of an aspect of its plea agreements with three of his co-conspirators in a mortgage fraud scheme violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Brester, Matthew Landsman, Joshua Unger, and Michael Chadwick conspired to charge lenders fraudulent "management fees" when they purchased and immediately re-sold apartment units. Landsman, Unger, and Chadwick each pleaded guilty to a single count of conspiracy to commit wire fraud and agreed to testify against Brester. The government provided Brester with copies of his co-conspirators' plea agreements, but it failed to inform him that it had separately agreed to recommend a loss amount under the advisory guidelines based only on the fraudulent transactions identified at the time of the plea agreements. The government offered Brester a plea agreement with a sentencing recommendation based on the same loss amount, but he rejected it. At trial, Brester thoroughly cross-examined Landsman, Unger, and Chadwick about several favorable terms of their plea agreements. Afterward, a jury convicted Brester of one count of conspiracy to commit wire fraud and three counts of wire fraud. Because Brester was not prejudiced by the failure to disclose the co-conspirators' agreements about the loss amount, we affirm.

2

## I. BACKGROUND

In 2006, Brester, Landsman, Unger, and Chadwick conspired to charge lenders fraudulent "management fees" when they purchased and immediately re-sold apartment units. Brester purchased nine apartments in Sarasota, Florida, and immediately re-sold them to Chadwick. When Chadwick applied for mortgage loans from SunTrust Bank and Fifth Third Bank, Brester charged the banks "management fees" for services he never performed. Although Chadwick and Landsman used some of the cash from the "management fees" to make mortgage payments, Chadwick later declared bankruptcy and all nine units went into foreclosure.

In August 2012, a grand jury indicted Brester for conspiracy to commit wire fraud affecting a financial institution, 18 U.S.C. §§ 1343, 1349, and nine counts of wire fraud, *id*. § 1343. Before Brester's indictment, Landsman, Unger, and Chadwick each pleaded guilty to single counts of conspiracy to commit wire fraud. The government offered Brester a plea agreement with the same loss amount as his co-conspirators, but he rejected it.

Landsman, Unger, and Chadwick testified at Brester's trial. They admitted that they had been convicted of conspiring to commit wire fraud and had agreed to cooperate with the government in exchange for plea agreements. A jury convicted

3

Brester of conspiracy to commit wire fraud and three counts of wire fraud, but it found him not guilty of the other six counts of wire fraud.

At sentencing, the government argued that the loss amount attributed to Brester should include several uncharged transactions it had discovered after Landsman, Unger, and Chadwick pleaded guilty. The government also revealed that it had agreed to recommend a loss amount for the co-conspirators based only on the fraudulent transactions it had identified at the time of their plea agreements. Brester's counsel denied that he had been informed of this aspect of the co-conspirators' plea agreements. The prosecutor conceded that although she offered Brester a plea agreement limited to the same fraudulent transactions and provided Brester with a copy of his co-conspirators' plea agreements, she had not informed him of the agreement to limit the co-conspirators' loss amount. The court sentenced Brester to a six-year prison term for each of his convictions, with all terms to run concurrently, and it ordered restitution in the amount of $1,266,156.

After Brester filed a notice of appeal, he filed a motion to dismiss his convictions, or, alternatively, for a new trial and an evidentiary hearing. He contended that the government violated *Brady*, 373 U.S. 83, 83 S. Ct. 1194, and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972), when it failed to inform him that it had agreed to limit his co-conspirators' loss amount. The district court denied the motion. The district court concluded that because Brester's appeal

4

was pending before this Court, it lacked jurisdiction to consider Brester's motion to the extent that it sought dismissal of his counts of conviction. The district court also ruled that to the extent that Brester's motion sought a new trial, it did not specify whether it relied on "newly discovered evidence," Fed. R. Crim. P. 33(b)(1), or "[o]ther [g]rounds," Fed. R. Crim. P. 33(b)(2). If Brester relied on "[o]ther [g]rounds," the district court concluded, his motion was untimely because he had not filed it within 14 days of the verdict. *Id*. And if Brester relied on "newly discovered evidence," Fed. R. Crim. P. 33(b)(1), that evidence was "merely impeaching or cumulative," and "probably would not produce a different result at a new trial." We directed the parties to submit supplemental briefs to address whether we have jurisdiction to review the denial of Brester's motion.

## II. STANDARDS OF REVIEW

We review an alleged *Brady* violation *de novo*. *United States v. Schlei*, 122 F.3d 944, 989 (11th Cir. 1997). We review for abuse of discretion the denial of a motion for a new trial. *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that we have jurisdiction to review the denial of Brester's motion. Second, we explain that Brester failed to establish a reasonable probability that the outcome of his trial

5

would have been different had the government disclosed its agreements with his co-conspirators.

*A. We Have Jurisdiction to Review the Denial of Brester's Motion.*

As a threshold matter, we must consider whether we have jurisdiction to review the denial of Brester's post-appeal motion despite his failure to file a separate notice of appeal from the denial of that motion. Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal must "designate the judgment, order, or part thereof being appealed," Fed. R. App. P. 3(c)(1)(B), and the Supreme Court has explained that this requirement is jurisdictional. *Smith v. Barry*, 502 U.S. 244, 248, 112 S. Ct. 678, 682 (1992).

We have previously exercised jurisdiction in this kind of circumstance. In *United States v. Wilson*, two of the appellants filed motions for a new trial in the district court after they filed their notices of appeal. 894 F.2d 1245, 1251 (11th Cir. 1990). "We recognize[d] that it is clearly the better practice to perfect a separate appeal from the denial of a motion for a new trial…." *Id*. But we followed an earlier precedent of the former Fifth Circuit, *United States v. Burns*, 668 F.2d 855 (5th Cir. 1982), and reviewed the denial of the motions "[b]ecause the government was not prejudiced…by [the appellants'] failure to file a separate notice of appeal" from the denial of the motions. *Wilson*, 894 F.2d at 1252. In this appeal too, the parties have briefed the issue as if Brester appeals the denial of his motion. Based

6

on our binding precedent in *Wilson*, we have jurisdiction over this appeal. *See*

*United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly

established rule of this Circuit that each succeeding panel is bound by the holding

of the first panel to address an issue of law, unless and until that holding is

overruled en banc, or by the Supreme Court.").

### B. The District Court Did Not Err When It Denied Brester's Motion.

To establish a *Brady* violation, Brester had to prove that the prosecution

withheld favorable evidence and that he was prejudiced as a result. *Strickler v.*

*Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 1948 (1999). And to establish

prejudice, Brester had to prove that there is "a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have

been different. A 'reasonable probability' is a probability sufficient to undermine

confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct.

3375, 3383 (1985). "The mere possibility that an item of undisclosed information

might have helped the defense, or might have affected the outcome of the trial,"

does not establish prejudice. *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S. Ct.

2392, 2400 (1976).

Even if the government should have disclosed its agreements with Brester's

co-conspirators about their loss amount, Brester failed to establish a reasonable

probability that the outcome of his trial would have been different. The undisclosed

information about the co-conspirators' loss amount was cumulative of other impeachment evidence. Landsman, Unger, and Chadwick admitted that they had been convicted of conspiring to commit wire fraud and had agreed to cooperate with the government in exchange for plea agreements. Chadwick and Unger testified that they were ordered to pay restitution jointly and severally with the other co-conspirators. Unger acknowledged on cross-examination that his plea agreement provided "a huge incentive" for him to testify against Brester. And Chadwick admitted that he would benefit if Brester was required to pay part of the restitution he owed jointly and severally with Unger and Landsman. The jury learned of the motivations for the co-conspirators' testimony, and we have repeatedly held that the failure to disclose "merely cumulative" impeachment evidence does not establish prejudice. *Aldridge v. Dugger*, 925 F.2d 1320, 1326 (11th Cir. 1991). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1361 (11th Cir. 2004); *United States v. Valera*, 845 F.2d 923, 927–28 (11th Cir. 1988). That the agreement to limit the co-conspirators' loss amount potentially reduced their advisory guideline ranges for sentencing by two levels would not have appreciably altered the mix of the impeachment evidence presented to the jury. Brester has not established that there is a reasonable probability that the outcome of his trial would have been different had the jury learned of the promise about the loss amount.

8

## IV. CONCLUSION

We **AFFIRM** Brester's convictions.