[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10423; 18-13448
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cr-00036-SLB-GMB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

VIRGIL DEIA NICKENS,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(April 9, 2020)

Before ED CARNES, Chief Judge, WILSON and HULL, Circuit Judges.

PER CURIAM:

Virgil Nickens appeals his conviction and sentence for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g), asserting four errors.  He contends that: (1) the United States did not comply with its discovery obligations under Brady v. Maryland; (2) the district court incorrectly applied a sentencing enhancement that increased his offense level by two points; (3) the district court erred in denying his posttrial motion to unseal; and (4) his conviction must be vacated in light of the Supreme Court's ruling in Rehaif v. United States, 139 S. Ct. 2191 (2019).  We reject all of Nickens' arguments and affirm his conviction and sentence.

## I.

A jury convicted Virgil Nickens of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The conviction was based on Nickens' sale of a gun to Mario Cobb, a confidential informant.  Cobb testified at trial that Nickens sold him the gun and ammunition.

At several points before trial, the government, upon Nickens' request, disclosed Brady[1] information about Cobb to Nickens.  First, on August 2, 2017, the government notified Nickens that it had a pending, unindicted case against Cobb

---

[1] Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

arising from a September 2014 search of Cobb's residence that uncovered drugs and a gun. The government also disclosed Cobb's record of prior convictions, his cooperation history, and information about his current and past cooperation agreements.

Four days before trial, Nickens filed a motion to compel discovery, seeking more information about the pending, unindicted federal charges Cobb was facing. Specifically, Nickens sought information about the "drug type and quantity" that Cobb had allegedly possessed, arguing that the information was crucial to his ability to fully cross-examine Cobb because the type and quantity of drugs Cobb allegedly possessed could mean that he faced a lengthy mandatory minimum sentence. The district court granted Nickens' motion and ordered the government to disclose the drug type and quantity and the amount of prison time Cobb could be facing. Two days before trial, the government told Nickens that "there was not much drugs found [sic]" in Cobb's possession, and the "only specific amount" the government could find reference to was "one ounce of marijuana." But the government said it could not tell Nickens the exact drug type and quantity because no toxicology report had ever been completed.

The next day (the day before trial), the government sent Nickens a copy of the search warrant return from the 2014 search of Cobb's home. The return indicated that the search uncovered a significant quantity of drugs and drug

3

paraphernalia, contradicting the government's previous statement about the amount of drugs.[2]  Based on that information, Nickens moved to dismiss the indictment, alleging that the government had violated Brady.  In the alternative, he sought a continuance.  In response, the government asked the district court to conduct an in camera inspection of its 91-page investigative file on Cobb to determine whether complying with Brady would require it to disclose the entire file to Nickens.

The district court granted the government's request and inspected the file during a closed hearing at which only the government was present.  After the closed portion of the hearing, with Nickens and his counsel present, the court acknowledged some discrepancies between the government's earlier representations about the potential charges Cobb faced and what the investigative file revealed.  The court nonetheless denied Nickens' motion to dismiss or for a continuance, explaining that Nickens would still be able to fully cross-examine Cobb on the potential benefits he could gain from cooperation.  The court did not find that the government needed to reveal its entire file to comply with Brady.

---

[2] The search warrant return listed, among other things, a bank bag containing an unspecified amount of MDMA and marijuana, a bag of suspected MDMA, a suspected MDMA capsule, an unspecified amount of marijuana, another container containing marijuana, suspected crack, a digital scale, and two-and-a-half glass marijuana pipes.

Trial began the next day, and Cobb testified that he had bought a gun and ammunition from Nickens.[3]  Nickens' attorney cross-examined Cobb extensively. In response to the attorney's questioning, Cobb admitted that he: had been a confidential informant since around 2006, and had acted as an informant for the Montgomery Police Department, the DEA, and the ATF; had started working with the MPD and DEA because he was facing criminal charges and a potentially lengthy prison sentence; had two prior felony convictions when he started working with the MPD and DEA; avoided charges in 2007 because of his work as an informant; began working for the ATF as an informant in 2014 because he was caught selling drugs; had been charged in a seven-count indictment in 2016 in Autauga County for drug charges stemming from his 2014 drug-selling activity; had been facing between 10 and 99 years in prison because of the 2016 indictment, but only served several months because he agreed to work as an informant; was facing serious federal charges stemming from a 2014 search of his home that uncovered drugs — including marijuana, MDMA, and hydrocodone — and a gun, and the threat of those charges spurred him to become an informant again; and had still not been arrested or gone to court on the federal charges.  Cobb acknowledged

---

[3] Although Cobb provided the only direct evidence that Nickens had sold him the gun, the government also presented evidence that Nickens owned the Ford Explorer an ATF agent had seen Nickens get into to buy the gun, that the phone number Cobb used to contact the person Cobb said was Nickens was associated with Nickens' Facebook account, and that the firearm Cobb purchased was "very similar" to a common firearm pictured on Nickens's Facebook page.

that he had done "a lot of work for the ATF," and that he did so hoping he would not be indicted on federal drug and gun charges. He admitted to being paid for his work as an informant, although he could not recall the amount of money he received. He also testified that he would get credit for his work as an informant only if he bought a firearm and identified the individual who had sold him a gun.

Nickens presented no evidence, and the jury convicted him of the sole charge of possession of a firearm and ammunition by a convicted felon.

In preparation for sentencing, the probation office prepared a Presentence Investigation Report. As relevant on appeal, the PSR recommended a two-level enhancement to Nickens' base offense level under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm Nickens possessed was stolen. The recommendation was based on the following statements in the PSR:

> [T]he serial number of the firearm revealed the handgun was purchased . . . by Regina Ryals on November 9, 2010. An ATF investigation revealed that Regina Ryals first noticed her firearm was missing on May 30, 2016, from her purse. Regina Ryals attempted to file a report with Prattville Police Department, Prattville, Alabama, but was informed her address was in the city limits of Montgomery, Alabama. Regina Ryals then attempted to file a police report with Montgomery Police Department, Montgomery, Alabama, but was told she needed to show proof of ownership. Regina Ryals obtained a purchase receipt . . . , but was told that would not be enough to prove ownership.

Nickens objected to application of the enhancement, arguing that there was no credible evidence the firearm had been stolen. He pointed to Ryals' admission that she had never reported the gun stolen and to the absence of any police report

6

indicating that it had been stolen.  Nickens argued that Ryals told the ATF agents that she had taken the gun out of her purse, placed it on her truck, and "may have driven off with the gun still on the back bumper of her truck."[4]  In part because Ryals was uncertain what had happened to her gun, Nickens argued that there was "no evidence of who possessed this gun after Ms. Ryals and no evidence of how this gun came to be in Mr. Nickens' possession."

The district court overruled Nickens' objection and applied the two-level enhancement.  Relying heavily on an Eighth Circuit case that held the enhancement applied to a gun that had been mislaid when its owner left it in a bar bathroom, the court said:

> Well, I don't see any difference in that and this.  This gun was in a case.  If it fell off the back of a truck — I mean it's the same thing.  Whoever found it, it would — it was clearly not — it was a gun, in a case even.  I mean, it was not just thrown away in a garbage can.

The court adopted the factual findings and guidelines calculation in the PSR, and sentenced Nickens to 51 months imprisonment followed by 3 years of supervised release.  Nickens appeals.

---

[4] Nickens was apparently relying on information from an ATF report of an interview with Ryals.  Nickens' sentencing memorandum references the report as an attachment, but the attachment is not in the record.

III.

Nickens first contends that he is entitled to a new trial because the government violated Brady by failing to disclose the "type, quantity, and status of the drugs involved" in Cobbs' unindicted federal offenses.  Nickens has not established a Brady violation.

We review an alleged Brady violation de novo.  United States v. Brester, 786 F.3d 1335, 1338 (11th Cir. 2015).  To establish a Brady violation, Nickens must show that the government withheld favorable information and that he was prejudiced as a result.  Id. at 1339; Strickler v. Greene, 527 U.S. 263, 281–82 (1999).  Although Brady requires the government to provide the defense with impeachment information, when that material is not disclosed, the defendant cannot establish prejudice if he "fully explored the extent of" the impeachment evidence.  Bueno-Sierra, 99 F.3d at 380.  Nor can a defendant establish prejudice if the impeachment evidence is "cumulative of other impeachment evidence."  Brester, 786 F.3d at 1339.

Nickens' Brady claim fails because he cannot show that he was prejudiced by the government's failure to disclose the type, quantity, and status of the drugs seized from Cobb's home in 2014.  That information was cumulative of impeachment evidence Nickens already had.  Nickens thoroughly and exhaustively impeached Cobb on cross-examination.  Cobb discussed the benefits he received in

8

exchange for testifying against Nickens. He acknowledged his lengthy history of informing and admitted that he was motivated to inform only when facing his own charges or for his own financial gain. He confirmed the significant sentencing benefits he had received in exchange for his past work as an informant. And he admitted that the threat of serious charges stemming from the 2014 search of his home had motivated Cobb to start informing again. Any additional impeachment value Nickens would have gained from being able to state the specific drug quantities and the precise amount of time Cobb was facing is duplicative. Nickens cannot show that he was prejudiced, so his Brady argument fails. See Bueno-Sierra, 99 F.3d at 375; Brester, 786 F.3d at 1339.

## IV.

Nickens also contends that the district court erred in enhancing his offense level under U.S.S.G. § 2K2.1(b)(4)(A) based on its finding that the firearm he possessed was stolen. He argues that the record shows only that Ryals misplaced the gun, not that it was stolen. The government argues that it has shown that the gun was stolen because it proved that: (1) Ryals purchased the gun, (2) Ryals went to two different police departments in an attempt to report the gun stolen; and (3) the gun was never turned in to law enforcement. We agree.

We review the district court's factual findings for clear error and its "application of the Guidelines to the facts with 'due deference.'" United States v.

9

White, 335 F.3d 1314, 1317 (11th Cir. 2003). The "'due deference' standard is, itself, tantamount to clear error review." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010). A finding is clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004). The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. United States v. Smith, 480 F.3d 1277, 1280–81 (11th Cir. 2017).

Section 2K2.1(b)(4)(A) directs courts to enhance a defendant's base offense level by two levels if the firearm involved in the offense was stolen. The guideline does not define stolen, and we have not addressed in a published opinion the test for determining whether a firearm has been "stolen" under § 2K2.1(b)(4)(A). But we need not decide that issue today because, even accepting the test Nickens points to, the district court did not clearly err in concluding that the firearm was stolen.

The only legal definition of "stolen" Nickens points to is from United States v. Bates, 584 F.3d 1105 (8th Cir. 2009). In Bates, the Eighth Circuit considered a defendant's challenge to the application of § 2K2.1(b)(4)(A). The gun's owner claimed that he had left his gun in the bathroom of a bar. Bates, 584 F.3d at 1109. He testified that he had "never authorized anyone to take [it], never sold it, and never gave it away as a gift." Id. Although there was no evidence about "exactly

10

when, where, or under what circumstances the gun went missing," the Eighth Circuit nonetheless affirmed the district court's conclusion that the gun was stolen. Id. at 1109–10.

In doing so, the court applied the Supreme Court's definition of the term "stolen" from the National Motor Vehicle Theft Act, reasoning that the context of both the NMVTA and § 2K2.1(b)(4)(A) "require[d] a broad interpretation of 'stolen.'" Id. at 1109. Instead of adopting the more narrow common-law definition for larceny, the Eighth Circuit held that "stolen" must include "all felonious or wrongful takings with the intent to deprive the owner of the rights and benefits of ownership." Id.

Under that broader definition of theft, keeping "lost or mislaid property can be a wrongful taking when there are readily available" ways to track down the property's "rightful owner." Id. at 1110. There had been a "readily ascertainable means of ascertaining the owner of the gun" in Bates — an unaltered, traceable serial number — but it had nonetheless ended up in the defendant's hands, so the Eight Circuit held that the gun had been "felonious[ly] or wrongful[ly] tak[en] with the intent to deprive the owner of the rights and benefits of ownership." Id.

Applying Bates' definition, the district court did not clearly err in finding that the firearm Nickens sold to Cobb was stolen. The district court found the

11

following facts about the firearm.[5]  A National Crime Information Center report identified Regina Ryals as the owner but did not indicate that the gun had been reported stolen or turned in to law enforcement.  Ryals first realized the gun was missing on May 30, 2016, when she noticed that it was not in her purse.  She likely lost the firearm when she set it, in its case, on the back of her truck and drove away.  She tried to report the gun stolen with both the Prattville and Montgomery Police Departments, but neither police department would accept her report.

Considering all these facts, the district court did not clearly err in concluding that the government had proven it was more likely than not that the firearm had been taken "with the intent to deprive the owner of the rights and benefits of ownership." Id. at 1109.  The evidence indicated that the gun was in a case when Ryals lost it, so, as the district court noted, "it was not just thrown away in a garbage can."  The serial number on the gun was linked to Ryals, who had attempted to report it stolen.  And the NCIC report did not indicate that the gun had

---

[5] Nickens acknowledges that "the district court apparently accepted [his] characterization of the facts," but asserts in a footnote that if the district court did not accept his facts, it had "imposed a sentence enhancement without requiring the government to present evidence to support a disputed, underlying fact," and we should vacate and remand.

Our review of the record confirms that the district court accepted Nickens' version of the facts, including that Ryals placed the gun in its case on the back of her truck and drove off.  But even if it did not accept his facts, Nickens likely forfeited any challenge he otherwise had to the district court's factual findings by raising it in such a cursory manner. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 6778, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

12

been turned in to any law enforcement agency. These facts indicate that, as in Bates, there was a "readily available means of ascertaining" the gun's owner, so "whoever gained possession of the gun knew that it was lost or mislaid, and took no steps to return it." Id. at 1110. The district court did not clearly err in applying § 2K2.1(b)(4) to enhance Nickens' guidelines range.

V.

After filing his notice of appeal raising the arguments we have discussed, Nickens sought in the district court a transcript of the court's in camera inspection of the government's investigative file of Cobb. The district court denied his request, citing the government's open and ongoing investigation of Cobb. Nickens appeals that ruling, invoking his due process right to appeal and the public's First Amendment and common law rights to access of trial proceedings.

We easily reject Nickens' right-to-appeal argument because the cases he cites don't support his argument.[6] We also reject his First Amendment and common law arguments. The district court did not abuse its discretion by finding that the government demonstrated good cause for keeping the file under seal.

---

[6] Nickens points to decisions holding that an indigent defendant may not be denied trial transcripts on appeal simply because of an inability to pay for them, see Hardy v. United States, 375 U.S. 277 (1964); Griffin v. Illinois, 351 U.S. 12 (1956), but he identifies no case addressing a situation similar to the one here. The authorities Nickens cite do not stretch as far as he wants them to.

The media and general public have a "firmly established" First Amendment right of access to criminal proceedings. Chi. Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1310 (11th Cir. 2001). When the First Amendment right-of-access applies, a court may exclude the public from a criminal proceeding only if it is "shown that the [exclusion] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Globe Newspaper Co. v. Superior Court of Cty. of Norfolk, 457 U.S. 596, 603 (1982). The common law also provides a right of access to judicial proceedings. See Romero v. Drummond Co., Inc., 480 F.3d 1234, 1245 (11th Cir. 2007). The common law right of access "includes the right to inspect and copy public records and documents." Chi. Tribune Co., 263 F.3d at 1311.

Discovery materials, however, do not fall within the scope of either the First Amendment or the common law right of access. Chi. Tribune Co., 263 F.3d at 1310, 1312; Romero, 480 F.3d at 1245. Instead, "[p]ublic disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." Chi. Tribune Co., 263 F.3d at 1310. So a party seeking to shield discovery material from disclosure to a third party need only show good cause for the sealing. Id.; cf. Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.").

The proceeding for which Nickens seeks a transcript — the district court's in camera inspection of the government's investigative file to determine if it contained Brady material — is a quintessential discovery proceeding. The government requested the hearing so that the district court could determine the extent of its discovery obligations under Brady. The Supreme Court has endorsed this sort of proceeding to resolve Brady-related discovery issues. See United States v. Agurs, 427 U.S. 97, 106 (1976) ("Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.") (emphasis added).

The sealing of the transcript was therefore appropriate so long as the government demonstrated good cause for it. See Chi. Tribune Co., 263 F.3d at 1310; Romero, 480 F.3d at 1245. The district court found that sealing the transcript balanced the government's interest in maintaining the confidentiality of its investigative report with Nickens' need for Brady information. It "balance[d] the asserted right of access against the other party's interest in keeping the information confidential," which is sufficient to show good cause. Chi. Tribune

15

Co., 263 F.3d at 1309.  The district court did not abuse its discretion in denying

Nickens' motion to unseal.[7]

## VI.

Nickens filed a supplemental brief arguing that his conviction must be

vacated in light of Rehaif v. United States, 139 S. Ct. 2191 (2019), because his

indictment did not charge, the jury was not instructed, and the United States did

not prove beyond a reasonable doubt that Nickens knew he was a convicted felon

at the time he possessed the firearm.  But Nickens cannot show that the trial court's

error affected his substantial rights, so he is not entitled to relief.

In Rehaif, the Supreme Court held that a defendant's knowledge of his status

as a felon is an element of the crime of possession of a firearm by a convicted

felon.  139 S. Ct. at 2200 ("[I]n a prosecution under 18 U.S.C. § 922(g) and

§ 924(a)(2), the Government must prove both that the defendant knew he

possessed a firearm and that he knew he belonged to the relevant category of

persons barred from possessing a firearm.").

---

[7] Besides, Nickens has likely forfeited any argument that the government did not show good cause because he made only constitutional and common-law right-of-access arguments on appeal.  See AT&T Broadband v. Tech. Commc'ns., Inc., 381 F.3d 1309, 1320 n.14 (11th Cir. 2004) ("Issues not raised on appeal are considered abandoned.").

Nickens makes his Rehaif argument for the first time on appeal, so we review only for plain error.[8]  See Reed, 941 F.3d at 1020.  To prevail on plain error review, Nickens must prove that an error occurred that was both plain and that affected his substantial rights.  See United States v. Olano, 507 U.S. 725, 732 (1993).  If he makes this showing, we may, in our discretion, correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  Id. (alteration adopted) (citation and quotation marks omitted).  We may consider the entire record when determining whether an error affected Nickens' substantial rights.  See Reed, 941 F.3d at 1021.

At trial, Nickens stipulated to the fact that he was a convicted felon.  At sentencing, Nickens did not object to (and therefore admitted) the portions of his PSR that indicated he had two felony convictions, one for Unlawful Distribution of

---

[8] Nickens argues that our review is de novo even though he did not make this argument below because his Rehaif argument raises a jurisdictional challenge to the indictment.  Nickens is wrong.  Jurisdiction concerns "the courts' statutory or constitutional power to adjudicate the case."  United States v. Cotton, 535 U.S. 625, 630 (2002).  Congress empowered district courts to try "all offenses against the laws of the United States," 18 U.S.C. § 3231, so "all that matter[s] for purposes of the district court's subject-matter jurisdiction [is] that the United States file[] an indictment charging [the defendant] with violating 'laws of the United States,' " United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014) (alteration adopted) (citation and quotation marks omitted).  The government did that in this case, and even Nickens does not argue otherwise.

Nickens also argues that our review is de novo because he challenged the sufficiency of the evidence at the close of the government's case.  But that challenge did not preserve for de novo review an entirely separate issue that he did not raise.  See United States v. Baston, 818 F.3d 651, 664 (11th Cir. 2016) ("When a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, we review his argument for plain error.").

17

a Controlled Substance, and one for Receiving Stolen Property. And Nickens'

PSR indicated that he had served almost three years in prison on the Unlawful

Distribution conviction. Each of those facts — and certainly those facts combined

— are enough for a reasonable jury to "have inferred that [Nickens] knew he was a

felon." Reed, 941 F.3d at 1022. Because Nickens cannot show a reasonable

probability that, but for the Rehaif error, the outcome of his trial would have been

different, he cannot show that the error affected his substantial rights. See Molina-

Martinez v. United States, 136 S. Ct. 1338, 1343 (2016); Reed, 941 F.3d at 1022.

Nickens' argument fails under plain error review.

    **AFFIRMED.**