[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10273

_____

D.C. Docket No. 3:14-cr-00153-MMH-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH LAMAR ELLINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 23, 2018)

Before ED CARNES, Chief Judge, NEWSOM, and SILER,[*] Circuit Judges.

PER CURIAM:

After a jury trial, Kenneth Ellington was convicted of two counts of bank

robbery by intimidation under 18 U.S.C. § 2113(a).  The district court sentenced

him to 180 months in prison.  He challenges his convictions and sentence.

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

## I.    FACTS AND PROCEDURAL HISTORY

On April 9, 2014, a man robbed TD Bank and, a few hours later, First Federal Bank.  The banks are located about six blocks apart in Live Oak, Florida.  The tellers at both banks gave similar descriptions of the robber:  a black male, about six-feet tall, slender, and wearing a black long-sleeved shirt or jacket, a red, green, and yellow Bob Marley-style hat, and a beard and dreadlocks that appeared fake.  Surveillance photos from each bank confirm that description.

The robber committed both crimes in similar fashion.  In the robbery at TD Bank, he walked in, approached a teller, and slid a book across the counter (no screen or barrier separated the robber and the teller).  A demand note was on top of that book.  The teller was so frightened that she read only the part of the note that said "give me your money."  The robber told her to "hurry" several times and reached down in front of him as though he had a gun, prompting the teller to give him about $1,000 in cash and a dye pack.  The robber left the bank, and an employee saw him run north up the street toward a real estate agency and then throw something down on the ground after the dye pack exploded.

Two or three hours later, the robber walked into First Federal Bank, approached a teller (a glass window separated them), handed her a note demanding money, and told her to "hurry up so no one will get hurt."  The teller was scared

2

and gave him about $4,000 in cash.  The robber left the bank and went across the street toward the parking lot of a Kentucky Fried Chicken restaurant.

Police officers collected evidence of the robberies from each bank.  Just north of the TD Bank, near the real estate agency, the police found $915 in cash scattered on the ground, a demand note,[1] a book, and an exploded dye pack.  The police spoke to a Kentucky Fried Chicken employee who had observed a black Dodge Charger parked in the restaurant's parking lot the morning of the robbery.  Later that day, the car was gone but there was a garbage bag where the car had been.  The police recovered the bag, which contained a fake beard, a Bob Marley-style hat with dreadlocks, and a black long-sleeved t-shirt.

The police sent that evidence to the state crime lab for analysis.  Two days after the robbery, a crime lab analyst developed a fingerprint off the book the robber used in the TD Bank robbery and determined that the print belonged to Kenneth Ellington.[2]  The analyst forwarded that information to the Live Oak Police Department, and the detective investigating the case pulled Ellington's driver's license information and photo from a driver and vehicle information database.  The database showed that Ellington lived in Quincy, Florida — about 100 miles from Live Oak — and that he owned a black Dodge Charger.  The

---

[1] The first line of the demand note read "All the money," and the second line read "Hundreds Fifties twenties only."

[2] The analyst determined that the book fingerprint belonged to Ellington by running the print through the federal Integrated Automated Fingerprint Identification System database.

detective also saw that Ellington resembled the robber in the First Federal Bank surveillance photo. Based on that information, he obtained arrest warrants for Ellington.

On April 14, 2014, Ellington was arrested in Quincy while driving his black Dodge Charger. Two days later he was transferred to Live Oak, where officers obtained his fingerprints and a DNA sample. Crime lab analysts determined that a fingerprint on the garbage bag found at the Kentucky Fried Chicken matched Ellington's left ring finger and that the DNA on the robber's hat, beard, and shirt matched Ellington's DNA.[3]

A grand jury indicted Ellington on two counts of robbery by intimidation under 18 U.S.C. § 2113(a). He did not testify or present any evidence during the three-day jury trial, and the district court denied his motion for judgment of acquittal based on insufficient evidence. The jury found Ellington guilty on both counts. The court sentenced him to 180 months in prison. This is his appeal.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence Challenge

---

[3] The crime lab used the Combined DNA Index System to determine that DNA evidence obtained from the robbery belonged to Ellington. The government, at the request of Ellington's counsel, agreed to not disclose to the jury that Ellington was already in that database and the fingerprint database.

Ellington first contends that the evidence was insufficient to convict him of robbery by intimidation under 18 U.S.C. § 2113(a).  "We review de novo the sufficiency of the evidence presented at trial, and we will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt."  United States v. White, 663 F.3d 1207, 1213 (11th Cir. 2011) (quotation marks omitted).  "In reviewing the sufficiency of the evidence, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in its favor."  Id. (quotation marks omitted).[4]

There was more than enough evidence for a reasonable juror to find Ellington guilty of bank robbery by intimidation which, unsurprisingly, means taking money belonging to a bank "by intimidation" and "from the person or

---

[4] In addition to his sufficiency challenge, Ellington argues that Sixth Amendment and Brady violations, as well as chain-of-custody problems, require reversal.  His argument that the government violated the Sixth Amendment's Confrontation Clause by not giving him the opportunity to confront the fingerprint analyst who compiled a compact disc of the fingerprint evidence fails because that analyst turned that CD over to the defense, testified at trial, and was subject to cross-examination.  See United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994) ("The main and essential purpose of confrontation is to secure for the [defendant] the opportunity of cross-examination.").  His Brady claims fail because the government turned over the allegedly non-disclosed evidence (a DNA report and fingerprint evidence) and the government could not turn over the TD Bank surveillance video because the bank never gave it to the government.  See United States v. Brester, 786 F.3d 1335, 1339 (11th Cir. 2015) (stating that a defendant must "prove that the prosecution withheld favorable evidence" to establish a Brady violation).  Finally, his chain-of-custody argument is deemed abandoned because he cites no authority to support it.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

5

presence of another."[5]  18 U.S.C. § 2113(a).  Both tellers testified that the robber approached them and slid or handed a demand note across the counter.  That satisfies the "person or presence" requirement.  See id.  As for intimidation, the teller at the TD Bank believed that the robber had a gun and he told the First Federal Bank teller to hurry so that no one would get hurt.  That is enough to establish intimidation.  See United States v. Kelley, 412 F.3d 1240, 1244 (11th Cir. 2005) (stating that "intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts," and concluding that intimidation element was satisfied even though the robbers did not display a gun); United States v. Graham, 931 F.2d 1442, 1442–43 (11th Cir. 1991) (concluding that intimidation element was satisfied where the defendant gave the teller a demand note, glared at her, and the teller testified that she was afraid).  And there is no dispute that the robber took money belonging to the banks.

There was also enough evidence for a reasonable juror to conclude that Ellington committed the robberies.  The tellers working at the banks gave similar descriptions of the robber, which the bank surveillance photos confirmed:  a slender black male with a beard and dreadlocks that looked fake, wearing a dark long-sleeved shirt or jacket and a red, green, and yellow Bob Marley-style hat.

---

[5] TD Bank and First Federal Bank are both "bank[s]" within the meaning of the statute because they are federally insured.  See 18 U.S.C. § 2113(f) (defining a "bank" as an institution "the deposits of which are insured by the Federal Deposit Insurance Corporation").

The TD Bank teller identified Ellington at trial. The jury considered evidence that a black Dodge Charger was parked across from the First Federal Bank on the morning of the robbery, and that Ellington owned that same make and model car.[6] The crime lab analyst also matched Ellington's fingerprints to the fingerprints from the book the robber used in the TD Bank robbery and to the garbage bag containing the items the robber used in an attempt to disguise himself.[7] Finally, the police recovered the beard, Bob Marley hat, and long-sleeved shirt that the robber wore, all of which had Ellington's DNA on them.[8]

---

[6] Ellington points to some alleged weaknesses and contradictions in the testimony about the TD Bank demand note, the getaway car, and the robber's height, but those "involve credibility decisions that are matters for the jury," and the "jury's verdict indicates it found [the government's] witnesses credible." United States v. Sanchez, 138 F.3d 1410, 1415 (11th Cir. 1998).

[7] Ellington filed a motion in limine to exclude the garbage bag fingerprint evidence, arguing that the government should have disclosed it sooner. (It was disclosed a week before trial). "Late disclosure of evidence required to be turned over under [Federal Rule of Criminal Procedure 16] or a standing discovery order necessitates reversal only if it violates a defendant's substantial rights." United States v. Bueno-Sierra, 99 F.3d 375, 380 (11th Cir. 1996). The district court did not err by denying that motion because the government turned over the evidence, albeit belatedly, Ellington did not need a continuance, and there was significant evidence against him. See id. (stating that "[s]ubstantial prejudice results if a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense," and concluding that "defendants suffered no such prejudice because there was significant other evidence" against them); United States v. Kubiak, 704 F.2d 1545, 1552 (11th Cir. 1983) (concluding that the government's failure to comply with discovery rules was not reversible error where the defendant did not move for a continuance).

[8] Ellington argues that the DNA and fingerprint evidence is flawed because the crime lab analysts matched the DNA and fingerprints collected from the robbery evidence to him even before the police had arrested him and obtained his fingerprints and DNA. True, but they were able to do that because his fingerprints and DNA were already in the fingerprint and DNA databases. The jury heard that the fingerprints and DNA linked to the robbery matched Ellington but not that the match was made by means of databases based on criminal arrests or convictions. As a result, there is no merit to Ellington's argument that he was prejudiced because of how the

7

The evidence was sufficient for a reasonable juror to conclude that Ellington robbed the TD and First Federal banks and that he committed the robberies by intimidating the tellers.  See Kelley, 412 F.3d at 1244–46.  As a result, the district court did not err in denying his motion for judgment of acquittal.[9]

### B.    Sentence Challenge

Ellington also challenges his 180-month sentence as substantively unreasonable.  His guidelines range was 63 to 78 months, but the district court departed upward under United States Sentencing Guidelines § 4A1.3 based on Ellington's criminal history, raising the guidelines range to 92 to 115 months.  See U.S.S.G. § 4A1.3(a)(1) (Nov. 2015) (providing that district courts may depart upward if "reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of [his] criminal history").

matches were made.  And nothing in the record supports his argument that the DNA evidence confused the jury.

[9] A detective testified that at the end of his post-arrest interview with Ellington, he told Ellington that he would take a statement any time Ellington wished.  Ellington argues that remark was a comment on his invocation of the right to remain silent.  Even if it was, the violation was harmless because it "had no substantial and injurious effect or influence in determining the jury's verdict."  United States v. Miller, 255 F.3d 1282, 1285 (11th Cir. 2001) (quotation marks omitted).  After Ellington objected, the court gave a curative instruction.  Not only that but the evidence against him was very strong.  See id. at 1285–86 ("[W]e have repeatedly held harmless a prosecutor's single reference to the defendant's post-Miranda silence if it occurs during a trial at which the government's evidence was otherwise overwhelming.");  United States v. Gonzalez, 921 F.2d 1530, 1549–50 (11th Cir. 1991) (concluding that an improper answer was harmless where defense counsel "quickly objected" and a "curative instruction was promptly given to the jury").

Ellington does not challenge that upward departure.[10]  The court then varied upward to 180 months to account for Ellington's significant criminal history, to promote deterrence and public safety, and to reflect the seriousness of the offense. Ellington does challenge that upward variance, contending that the court put too much weight on his criminal history, resulting in the upward variance and an unreasonable sentence.

We review the substantive reasonableness of Ellington's sentence only for abuse of discretion.  United States v. Irey, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  Id. at 1189 (quotation marks omitted).  Even if the district court considers all the proper factors, it must still weigh them reasonably.  Id.  We will vacate a sentence for unreasonable weighing of factors "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors

---

[10] Ellington uses the terms "departure" and "variance" interchangeably in his brief, but he never challenges the upward departure itself.  As a result, we address only the upward variance, which he does challenge.  See Sapuppo, 739 F.3d at 681 (stating that a party abandons a claim where the party "does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to [the claim]") (quotation marks omitted).

9

by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1190 (quotation marks omitted).

The district court considered all of the proper factors and balanced them reasonably. Its emphasis on Ellington's extensive criminal history was appropriate. See United States v. Rosales-Bruno, 789 F.3d 1249, 1263 (11th Cir. 2015) ("Placing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to consider are related to criminal history."). His criminal history dates back to 1986 when he was 18 years old. It includes five robbery convictions (not counting these two) as well as convictions for driving under the influence, unauthorized use of a motor vehicle, possession of marijuana, criminal possession of stolen property, menacing and harassment, absconding from temporary release, and reckless driving. He received a 222-month sentence in 1996 after a jury found him guilty of two counts of bank robbery, two counts of Hobbs Act robbery (involving two grocery stores), and possessing a firearm during a crime of violence. He was released in July 2012, but less than two years later he committed the robberies in this case even though he was still serving a two-year term of supervised release for his 1996 convictions.[11] As we said of another criminal some years back, his rap sheet "is long enough to

---

[11] When he was arrested for these crimes, Ellington was on supervised release in the Northern District of Florida. See United States v. Ellington, 681 F. App'x 868, 868–69 (11th Cir. 2017) (unpublished) (noting that Ellington is a "recidivist bank robber and habitual violator of conditions of supervised release").

10

require extra postage," and "from [his] criminal record it seems as though he is determined to serve a life sentence, albeit on the installment plan." United States v. Shaw, 560 F.3d 1230, 1231–32 (11th Cir. 2009). The district court added that Ellington robbed the TD and First Federal banks despite having a "roof over his head," a "place to stay," and "food on the table."

In light of Ellington's extensive criminal history, the court reasonably determined that an above-guidelines sentence was necessary to serve the purposes of the 18 U.S.C. § 3553(a) factors. See Rosales-Bruno, 789 F.3d at 1263 ("Under substantive reasonableness review, we have repeatedly affirmed sentences that included major upward variances from the guidelines for defendants with significant criminal histories that the sentencing courts weighed heavily."). As the district court observed, by committing these robberies so soon after his release from his 222-month sentence for robbery Ellington showed that he had "learned very little from his prior incarceration" and that his earlier sentence did not succeed in deterring him from robbing again. See 18 U.S.C. § 3553(a)(2)(B) (sentence must deter criminal conduct). The court also pointed out that his overall criminal history "reflect[ed] his intention to commit further crimes whenever he is not incarcerated," which threatens public safety. See id. § 3553(a)(2)(C) (sentence must protect the public). And the court explained that a higher sentence would reflect the seriousness of the offense, citing the tellers' testimony about how

11

frightened they were when Ellington robbed the banks.  See id. § 3553(a)(2)(A).

After carefully considering all of those factors, the district court determined that a 180-month sentence — well below the 240-month statutory maximum — was necessary to accomplish the goals of § 3553(a).  The district court's upward variance from 115 months, which was the top of the post-departure guidelines range, is not unreasonable.  See United States v. McKinley, 732 F.3d 1291, 1294–95, 1298–99 (11th Cir. 2013) (affirming variance from 57–71 months up to 125 months where the defendant had "more than 25 years of criminal history encompassing crimes from burglary and robbery to grand theft and reckless driving" and the sentence was "well below the statutory maximum"); United States v. Early, 686 F.3d 1219, 1221–23 (11th Cir. 2012) (affirming variance from 78–97 months up to 210 months based on the defendant's extensive criminal history, as well as the need to deter the defendant and protect the public).  And we are not "left with the definite and firm conviction" that the resulting 180-month sentence is substantively unreasonable.  Irey, 612 F.3d at 1190 (quotation marks omitted).[12]

---

[12] Ellington has a few more contentions, which barely merit mention.  One is that his sentence is unconstitutional because any fact that increases a mandatory minimum must be submitted to the jury.  See Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151, 2155 (2013).  Fair enough, except that no mandatory minimum was involved in this case.  Another contention is that the government failed to produce documents complying with the Supreme Court's Shepard decision.  See Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).  It was not required to do so because this is not an Armed Career Criminal Act case.  See id. at 15–16, 125 S. Ct. at 1257.  He also asserts Fourth Amendment and harmless error arguments for the first time in his reply brief, which is too late.  See Sapuppo, 739 F.3d at 683 ("We decline to address

**AFFIRMED.**[13]

---

an argument advanced by an appellant for the first time in a reply brief.") (quotation marks omitted).

[13] Although this case was originally on the oral argument calendar, it was removed under 11th Circuit Rule 34-3(f).

13