[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 16-10780; 16-17749
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20677-FAM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD SHELLEY,
a.k.a. Tristan Baker,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 8, 2019)

Before WILSON, NEWSOM, and HULL, Circuit Judges.

PER CURIAM:

Richard Shelley appeals his conviction and sentence for attempting to

possess 500 or more grams of cocaine with intent to distribute under 21 U.S.C.

§ 846. First, Shelley argues that the district court erred by denying his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). Second, Shelley argues that the district court violated his constitutional right to present a defense by limiting the scope of his cross-examination of two of the government's witnesses. Third, Shelley argues that the district court abused its discretion by denying his motion for a new trial based on newly-discovered evidence. Fourth, Shelley argues that the district court procedurally erred in calculating his guideline range. Fifth, Shelley argues that the district court's above-guideline 240-month sentence is substantively unreasonable because the court relied on erroneous factors to justify an upward variance. We disagree and affirm.

I.

First, Shelley argues that the district court erred in failing to make a finding that a prospective African-American juror was struck for a non-discriminatory reason under *Batson*. We review for clear error a trial judge's finding that a prosecutor has exercised peremptory strikes free of discriminatory intent. *United States v. Alston*, 895 F.2d 1362, 1366 (11th Cir. 1990). The trial judge's assessment of the prosecutor's credibility is entitled to great deference. *Batson*, 476 U.S. at 98 n.21.

Although a prosecutor ordinarily is entitled to use peremptory challenges for any reason, the Equal Protection Clause forbids a prosecutor from challenging

2

potential jurors solely on account of their race. *Id.* at 89. *Batson* provides a three-step process for trial courts to use in determining whether a peremptory challenge was based on race: (1) the objecting party must make a prima facie showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the juror in question; and (3) the trial court must determine whether the objecting party has carried its burden of proving purposeful discrimination. *United States v. Allen-Brown*, 243 F.3d 1293, 1297 (11th Cir. 2001). The ultimate burden of persuasion, however, remains with the party challenging the strike as discriminatory. *United States v. Hill*, 643 F.3d 807, 837 (11th Cir. 2011).

Shelley argues that the district court erred by failing to make a finding that the government used a peremptory strike on a prospective African-American juror for a non-discriminatory reason. The district court was not, however, required to make this finding because Shelley failed to object to the government's use of a peremptory strike on the prospective juror. *See Allen-Brown*, 243 F.3d at 1297. Because Shelley did not properly raise a *Batson* challenge to the prospective juror in question, the district court did not err by failing to make a finding that the prospective juror was struck for a non-discriminatory reason.

II.

3

Second, Shelley argues that the district court violated his constitutional right to present a defense by limiting cross-examination of the undercover detective and confidential informant (CI). Specifically, he argues that the district court erred by limiting his and a co-defendant's questions regarding: (1) what the CI earned on other cases; (2) whether the CI had worked as a CI for other agencies; (3) the CI's phone number; (4) how many times the CI spoke with Shelley without recording it; (5) whether the undercover detective believed the CI was honest with him; (6) what instructions the undercover detective gave the CI; and (7) whether the CI deleted text messages between him and Shelley. Shelley argues that the excluded testimony was essential to his defense—that he was falsely induced to travel to the agreed upon location to purchase cocaine.

Limitations on the scope and extent of cross-examination are matters expressly committed to the sound discretion of the trial judge, and we review such decisions only for a clear abuse of discretion. *United States v. Matthews*, 168 F.3d 1234, 1244 (11th Cir. 1999). While the Constitution unquestionably provides a defendant with the right to present a defense to criminal charges against him, this right is not unbounded. *See United States v. Frazier*, 387 F.3d 1244, 1271 (11th Cir. 2004). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). The district

4

court has discretionary authority to rule on the admissibility of evidence, including the power to limit cross-examination. *United States v. Garcia*, 13 F.3d 1464, 1468 (11th Cir. 1994). A defendant is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1366 (11th Cir. 1994). A defendant may only cross-examine a witness if the information sought to be elicited is relevant. *United States v. Diaz*, 26 F.3d 1533, 1540 (11th Cir. 1994). The district court also enjoys wide latitude to impose reasonable limits on cross-examination based on, among other things, confusion of the issues and interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Here, the district court did not abuse its discretion by imposing limitations on Shelley and his co-defendant's cross-examinations of the undercover detective and CI, as the district court's limitations were reasonable. *See Garcia*, 13 F.3d at 1468; *Baptista-Rodriguez*, 17 F.3d at 1366; *Van Arsdall*, 475 U.S. at 679. With respect to Shelley's first two assertions—that the district court erred in preventing questions regarding what the CI earned in other cases, and whether the CI had worked as a CI for other agencies—the court did not abuse its discretion by limiting these inquires. The district court had already permitted both the undercover detective and CI to testify about the CI's role and history as a CI, and

5

accordingly, the district court reasonably determined that any further questions regarding the CI's personal history would be repetitive and excessive. *See Van Arsdall*, 475 U.S. at 679.

Third, Shelley argues the district court erred in preventing inquiries about the CI's phone number. But Shelley fails to explain how the district court abused its discretion by determining that a question regarding the CI's phone number was irrelevant. *See Diaz*, 26 F.3d at 1540. Fourth, the district court did not abuse its discretion by preventing the co-defendant's counsel from asking the CI about the number of unrecorded conversations between Shelley and the CI. This question was not relevant to his client, and Shelley's counsel was permitted to ask similar questions. *See id.*; *see also Van Arsdall*, 475 U.S. at 679.

Fifth, the district court reasonably determined that the undercover detective's opinion regarding the CI's honesty was irrelevant because the CI was set to testify, and the CI's trustworthiness was a question for the jury. *See Jackson v. Denno*, 378 U.S. 368, 386 n.13 (1964) (holding that questions of admissibility of evidence are traditionally for the court, while questions of witness credibility are for the jury). Sixth, questions to the CI regarding what instructions the undercover detective gave him were properly excluded as hearsay. Lastly, the record clearly belies Shelley's seventh assertion that he was precluded from asking the CI whether he had deleted any text messages. The district court allowed Shelley's

6

counsel to question the CI at length about whether he had deleted any text messages and permitted counsel to impeach the CI's testimony with a text message that indicated deletion of text conversations between the CI and Shelley.

Accordingly, the district court acted within its wide discretion by imposing reasonable limits on Shelley and his co-defendant's cross-examinations of the CI and undercover detective, and Shelley has failed to show that these limitations denied him his right to present a defense.

### III.

Next, Shelley argues that the district court erred in denying his motion for a new trial based on newly-discovered text messages between Shelley and the CI. Moreover, Shelley argues that the government's failure to turn over these messages constituted a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963).

We review the district court's denial of a motion for new trial for abuse of discretion. *United States v. Brester*, 786 F.3d 1335, 1338 (11th Cir. 2015). We review alleged *Brady* violations de novo. *Id.* The burden to show a *Brady* violation lies with the defendant, not the government. *See United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

Federal Rule of Criminal Procedure 33(a) provides that, upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. FED. R. CRIM. P. 33(a). Motions for a new trial are

7

highly disfavored, and district courts should exercise caution in granting a new trial based on newly discovered evidence. *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003). To obtain a new trial based on newly discovered evidence, a defendant must show that: (1) the evidence was discovered after trial; (2) the defendant's failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result. *Id.* The failure to satisfy any one of these elements is fatal to a motion for a new trial. *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005).

To obtain a new trial under *Brady v. Maryland*, the defendant must prove: (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different. *Vallejo*, 297 F.3d at 1164. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The district court here did not abuse its discretion by denying Shelley's motion for a new trial because the newly-discovered text messages were (1) not

8

diligently obtained and (2) immaterial, both of which constitute independent grounds for the denial of Shelley's motion. *See Jernigan*, 341 F.3d at 1287; *Brester*, 786 F.3d at 1338; *Thompson*, 422 F.3d at 1294.

First, the newly-discovered text messages were not diligently obtained. Shelley, as a participant in the text messages, knew about their existence before and during trial, yet made no effort to obtain the messages by subpoenaing his or the CI's phone records, or by attempting to access the messages at an earlier time. Additionally, the newly-discovered text messages are immaterial and do not undermine confidence in the trial's outcome to warrant a *Brady* violation. Shelley argues that the newly-discovered text messages support his theory that his discussions with the CI were discussions related to a car transaction, not discussions related to the purchase of cocaine. Even if the newly-discovered text messages could convince the jury that Shelley went to the agreed-upon location for a car-related transaction, the fact remains that upon arrival at the location he examined and handled the cocaine, tested it by rubbing it into his gums, and retrieved the money from his vehicle to purchase the cocaine; all of which was captured on video and supported by eyewitness testimony. The newly-discovered text messages are therefore immaterial because Shelley unequivocally attempted to purchase cocaine once he arrived at the agreed-upon location. Accordingly, the

9

district court did not abuse its discretion in denying Shelley's motion for a new trial based on the newly-discovered text messages.

IV.

Shelley argues that the district court procedurally erred in calculating his guideline range by (1) holding him accountable for four kilograms of cocaine when he only agreed to purchase two kilograms, and (2) imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm because there is no evidence that he possessed a firearm and he cannot be held accountable for a co-conspirator's firearm possession.

We review the procedural reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In determining procedural reasonableness, we review purely legal questions de novo, a district court's factual findings for clear error, and a district court's application of the Sentencing Guidelines to the facts with due deference. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136–37 (11th Cir. 2004).

We review procedural sentencing issues for plain error when there was no objection in the district court. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). Under plain error review, a party must show (1) that an error occurred, (2) the error was plain, and (3) the error affected the party's substantial rights. *Id.* "If all three conditions are met, [this Court] then decides whether the

10

error seriously affected the fairness . . . of the judicial proceeding." *Id.* "Where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (citing *United States v. Lejarde-Rada*, 319 F.2d 1288, 1291 (11th Cir. 2003) (per curiam)).

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a significant procedural error, such as failing to calculate or improperly calculating the Guidelines range, treating the Guidelines as mandatory, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. *Gall*, 552 U.S. at 51.

To determine the quantity of drugs attributable to a defendant for sentencing purposes, the sentencing court should make findings of fact. *United States v. Agis-Meza*, 99 F.3d 1052, 1054–55 (11th Cir. 1996). When the defendant objects to a factual finding that is to be used as a basis for sentencing, the government bears the burden to establish the disputed fact—that is, the quantity of drugs attributed to the defendant—by a preponderance of the evidence. *Id.* at 1055. A district court's determination of drug quantity used to establish a defendant's base offense level is

11

reviewed for clear error.  *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000).

When the amount of drugs seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.  U.S.S.G. § 2D1.1, comment. (n.5).  In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the defendant establishes that he did not intend to purchase, or was not reasonably capable of purchasing, the agreed-upon quantity of the controlled substance.  *Id.*  So long as the district court's decision is plausible on the record, this Court will not reverse a drug quantity finding under clear error review.  *See, e.g.*, *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

The offense level for a drug offense is increased by two levels if "a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  The commentary explains that "[t]he adjustment should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense."  *Id.*, comment. (n.11(A)).

In *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995), this Court explained that § 2D1.1(b)(1) requires the government to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct.  Once this showing is made, the evidentiary burden shifts to the defendant to show

12

that a connection between the firearm and the offense is clearly improbable. *Id.* A defendant's failure to produce such evidence permits a district court to apply such an enhancement without committing clear error. *See id.* at 63–64. Acquittal of a firearm possession charge does not preclude enhancement under this section. *See United States v. Lynch*, 934 F.2d 1226, 1234 n.8 (11th Cir. 1991).

The district court properly calculated Shelley's guideline range because it did not err in attributing four kilograms of cocaine to Shelley or applying a two-level firearm possession enhancement. First, the record amply supports the district court's four kilogram finding, which this Court can only set aside if Shelley demonstrates clear error. *See Simpson*, 228 F.3d at 1298. The district court did not clearly err in attributing four kilograms of cocaine to Shelley as his recorded statements to the CI demonstrated his intent to purchase four kilograms. *See* U.S.S.G § 2D1.1, comment. (n.5). Shelley initially discussed purchasing four kilograms of cocaine from the CI, but then restructured the deal to purchase two kilograms at the outset and purchase the other two kilograms if the cocaine was of sufficient quality. Shelley went on to state to the CI that he could pick up the additional two kilograms the next day. Based upon these conversations, the district court had grounds to find, by a preponderance of the evidence, that Shelley's relevant conduct included a four, not merely two, kilogram deal. The commentary of § 2D1.1 further supports the district court's four kilogram finding, as "the

13

agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not the defendant." U.S.S.G. § 2D1.1, comment. (n.5). Thus, although the CI only brought two kilograms of cocaine to the purchase site, Shelley's recorded statements made to the CI clearly indicate his intent to purchase the additional two kilograms the next day. Shelley failed to establish that he did not intend to purchase the additional two kilograms of cocaine. *See id.* Nor has Shelley established that he was not reasonably capable of purchasing the additional two kilograms, as his statements indicate that he could sell the first two kilograms in a single day and use those profits to purchase the next two kilograms. *See id.* Accordingly, the district court did not clearly err in attributing four kilograms of cocaine to Shelley, as the district court's finding was plausible on the record. *See McPhee*, 336 F.3d 1275.

With respect to Shelley's claim that the district court erred in applying a two-level enhancement for firearm possession under § 2D1.1(b)(1), Shelley failed to object to this enhancement before the district court, and we thus review for plain error. *See Vandergrift*, 754 F.3d at 1307. The district court did not plainly err in applying the two-level enhancement because the government offered evidence that Shelley possessed a firearm during the drug transaction, including Shelley's post-*Miranda* statement to law enforcement acknowledging that law enforcement

14

found a firearm hidden in his waistband at the time of his arrest. *See Hall*, 46 F.3d at 63. Shelley failed to provide evidence that a connection between the firearm and his offense was clearly improbable. *See id.* at 64 ("If a weapon was present, the enhancement applies unless a connection was clearly improbable."). Moreover, Shelley has not provided any precedent from the Supreme Court or this Court showing that the district court plainly erred in applying the enhancement. *See Hesser*, 800 F.3d at 1325 ("Where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

## V.

Lastly, Shelley argues that his 240-month sentence is substantively unreasonable because (1) the sentence was not supported by relevant sentencing factors, (2) the district court failed to use his guideline range as a benchmark, and (3) the district court failed to provide sufficiently compelling reasons to justify its upward variance.

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall*, 552 U.S. at 51. The party who challenges the sentence bears the burden to show that the sentence is unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

15

The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *United States. v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc); 18 U.S.C. § 3553(a)(2). The district court must also consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). This Court examines the totality of the circumstances in reviewing the substantive reasonableness of a sentence, but due deference must be given to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance. *United States v. Hayes*, 762 F.3d 1300, 1307 (11th Cir. 2014). We will only remand for resentencing when left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). A district court can abuse its discretion, however, when it (1) fails to consider relevant factors that were due significant

16

weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *Id.* at 1192.

In reviewing the reasonableness of a sentence outside the guideline range, this Court may take the degree of variance into account and consider the extent of a deviation from the Guidelines. *Gall*, 552 U.S. at 47. A major variance should be supported by a more significant justification than a minor variance, and the justification must be sufficiently compelling to support the degree of the variance. *Id.* at 50. But there is no rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. *Id.* at 47. Moreover, a sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding that the sentence was reasonable in part because it was well below the statutory maximum).

Here, the district court did not abuse its discretion by imposing a 240-month sentence because the court based its sentence on relevant § 3553(a) sentencing factors. In imposing Shelley's sentence, the district court expressly stated that the sentence was necessary to provide just punishment, deter Shelley's conduct, protect the public from Shelley's future crimes, and promote respect for the law. *See* 18 U.S.C. § 3553(a)(2). Further, the district court determined that the nature

17

and circumstances of Shelley's offense supported the variance because attempting to possess four kilograms of cocaine is a serious offense, especially when bringing firearms to the transaction. *See id.* at § 3553(a)(1). Moreover, the fact that Shelley's co-defendant received a substantially shorter sentence does not alter the result. Although one of the § 3553(a) factors does require the court to "avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6), Shelley's co-defendant pleaded guilty and accepted responsibility for the offense, which the district court considered when finding Shelley more culpable than his co-defendant. This is especially true when Shelley's co-defendant was only participating in a drug transaction that Shelley helped instigate and facilitate. Accordingly, Shelley has not shown that his and his co-defendant's situations are similar enough that the differences between their sentences are unwarranted. *See United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008); *see also* 18 U.S.C. § 3553(a)(6). Lastly, Shelley's 240-month sentence was well below his statutory maximum sentence of 40-years' imprisonment, which indicates, in part, that the district court imposed a reasonable sentence. *See Gonzalez*, 550 F.3d at 1324.

Contrary to Shelley's argument that the district court did not provide adequate reasons for imposing the 240-month sentence, the district court expressly stated that it considered the § 3553(a) factors and even listed some of the factors and applied them to Shelley's case. The district court did not abuse its discretion

18

in imposing a 240-month sentence as the court relied on sufficiently compelling reasons to justify its upward variance. Due deference must be given to the district court's decision that the § 3553(a) factors justify the extent of the variance, *Hayes*, 762 F.3d at 1307, and we are without a definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors to warrant a remand for resentencing, *Pugh*, 515 F.3d at 1191. Shelley has thus failed to show that the district court imposed a substantively unreasonable sentence.

Accordingly, we affirm.

**AFFIRMED.**